# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **DARYL FONZEL FIELDS,** | ) |
| Petitioner, | ) |
| v. | ) Case No. CIV 14-436-RAW-KEW |
| **BRUCE HOWARD,** | ) |
| Respondent. | ) |

## **OPINION AND ORDER**

This matter is before the Court on Petitioner's petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner, a former state prisoner, is challenging his conviction in Carter County District Court Case No. CF-2012-514B for Second Degree Burglary, After Former Conviction of Two or More Felonies. Pursuant to the Court's previous Opinion and Order, Petitioner has advised that he is seeking relief for his exhausted habeas claims in the petition: (1) Confrontation Clause violation, (2) insufficient evidence, and (3) prosecutorial misconduct during closing arguments (Dkt. 11).

Respondent concedes that Petitioner has exhausted his state court remedies for the purpose of federal habeas corpus review (Dkt. 16). The following records have been submitted to the court for consideration in this matter:

- A. Petitioner's direct appeal brief.
- B. The State's brief in Petitioner's direct appeal.
- C. Summary Opinion affirming Petitioner's judgment and sentence. *Fields v. State*, No. F-2013-561 (Okla. Crim. App. June 3, 2014).
- D. Transcripts
- E. State court record.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Background**

Petitioner was charged, in concert with Kristin Hope Allen, with the November 13, 2012, second degree burglary of Robert Burkhart's house in Ardmore, Oklahoma (O.R. 1). A "second page" alleged the burglary was committed after Petitioner's eight prior felony convictions (O.R. 2-3). Petitioner was convicted by a jury and sentenced to imprisonment for six years (O.R. 53, 60, 74).

**Confrontation Clause**

Petitioner alleges in Ground One of the petition that his rights under the Confrontation Clause were violated when the trial court improperly allowed Ardmore Police Officer Larry Payne to testify on redirect about co-defendant Kristin Allen's comments about Petitioner. Respondent asserts any Confrontation Clause violation was harmless.

Petitioner raised this claim on direct appeal, and the Oklahoma Court of Criminal Appeals ("OCCA") found the testimony was error, but any error was harmless:

> We reject Field's claim that he is entitled to relief because of the trial court's admission of his non-testifying co-defendant's statement from her police interview. *See Hanson v. State*, 206 P.3d 1020, 1025 (Okla. Crim. App. 2009). The statement was the kind of "testimonial hearsay" that the *Crawford* Court held violated the Confrontation Clause. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004) ("testimonial" hearsay included statements made during police interrogations). Because the prosecution did not show that the witness was unavailable and that Fields had a prior opportunity to cross-examine her, the statement was inadmissible. *See id.* (testimonial hearsay is inadmissible unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness).
>
> The error, however, was harmless beyond a reasonable doubt. *See Chapman v. California*, 386 U.S. 18, 24 (1967); *see also Marshall v. State*, 232 P.3d 467, 476 (Okla. Crim. App. 2010) ("violations of the Confrontation Clause are subject to harmless error analysis"). There was substantial evidence of Fields' guilt without the statement, and the prejudicial effect of the hearsay statement was minimal. *See Harmon v. State*, 248 P.3d 918, 933 (Okla. Crim. App. 2011) ("[w]here the weight of the properly admitted evidence is overwhelming and the prejudicial effect of the inadmissible evidence is insignificant in comparison, the

error may be viewed as harmless."). Because we are convinced the error did not contribute to the verdict, error in the admission of the hearsay statement of the co-defendant was harmless beyond a reasonable doubt. This claim is denied.

*Fields v. State*, No. F-2013-561, slip op. at 2-3 (Okla. Crim. App. June 3, 2014) (Dkt. 16-3).

The Supreme Court has held that "in § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard" from *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). *Fry v. Pliler*, 551 U.S. 112, 121 (2007). Confrontation Clause errors are subject to harmless error analysis, *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986), and habeas relief is warranted only if the error was not harmless, *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001).

> When a federal court considers a Confrontation Clause violation in a habeas proceeding, the relevant harmless error analysis is whether, assuming that the damaging potential of cross-examination were fully realized, a reviewing court might nonetheless say that the error had substantial and injurious effect or influence in determining the jury's verdict.

*Littlejohn v. Trammell*, 704 F.3d 817, 844-45 (10th Cir. 2013) (quoting *Jones v. Gibson*, 206 F.3d 946, 957 (10th Cir. 2000)). Habeas courts conduct harmless error review *de novo*, and must consider factors such as the "importance of the witness' testimony to the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *Id.* (quoting *Van Arsdall*, 475 U.S. at 684).

Petitioner complains of the following trial testimony by Officer Payne, the State's rebuttal witness:

> Q. [Defense Counsel] You haven't uncovered anything in your investigation to reveal that [Petitioner] was intending to go there to steal things; is that right?
>
> A. [Officer Payne] No, Sir.

(Tr. 161; Dkt. 18-4).

> Q. [Prosecutor] Detective, you--on cross-examination from Mr. May, you said that--Mr. May said that you didn't have any evidence if they had any intent to steal anything. Did you interview--interview Kristin Allen in this case?

3

> A. [Officer Payne] I did interview her. Yes, sir.
>
> Q. Do you stand by that statement that they didn't have any intent to steal?
>
> A. Their intention, as far as what she knew, was that she had been forced to walk over there with him--
>
>> [Defense Counsel]: Objection; hearsay.
>>
>> [Officer Payne]: --that was her story.
>>
>> THE COURT: Overruled.
>
> [Officer Payne]: Then when they got there and the homeowner was not home, that Mr. Fields told her that he needed to go pee--was his words; went down into the ditch that was just to the west of the house; came back with a brick; wrapped the brick up in the sweatshirt and hit the window twice, breaking the window; and he told her to go inside, get the flat-screen TV and some liquor bottles and anything else that--that she thought that they could sell and pass it out to him. That was her--that was her answer in the interview.

(Tr. 163). On recross-examination defense counsel also asked Officer Payne about Ms. Allen's statements (Tr. 164).

Here, the Court agrees with the OCCA that the Confrontation Clause violation was harmless, and as discussed below, there was substantial evidence of Petitioner's guilt without the statement. Any prejudicial effect of the hearsay statement was minimal and did not have a substantial and injurious effect or influence on the jury's verdict.

The Court also finds the determination of this issue by the OCCA was not contrary to, or an unreasonable application of, clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1). Furthermore, the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). This ground for habeas relief fails.

**Sufficiency of the Evidence**

Petitioner alleges in Ground Two of the petition that the State did not present evidence that he entered the victim's home or that he intended to steal. Instead, the evidence showed only that a crime had been committed.

4

Petitioner's trial testimony conflicted with the explanation for his actions he gave in his videotaped police interview. Petitioner insisted to Ardmore Police Detective Larry Payne that Mr. Burkhart's window already was broken, and the house already had been burglarized when he and Ms. Allen came upon it (Tr. 157-59; State's Exhibit 16). Petitioner claimed he and Ms. Allen were merely checking out the situation. *Id.*

At trial, however, Petitioner testified he walked Ms. Allen to Mr. Burkhart's house (Tr. 128). When they arrived, she broke into the house and walked through it while he stood outside, refusing to enter the house or to take anything from the house (Tr. 129-31). Petitioner claimed Ms. Allen was the person who took Mr. Burkhart's property by throwing it out the window (Tr. 132, 144). When she tried to pass the television to Petitioner, he shoved it back inside, resulting in her throwing the TV out the window in a manner that caused it to land around the corner of the house with no obvious damage (Tr. 144-46).

On direct appeal, the OCCA reviewed this claim on the merits and denied relief:

> After reviewing the evidence in the light most favorable to the State, we find that any rational trier of fact could find beyond a reasonable doubt that Fields committed the burglary with the intent to steal based on the circumstantial evidence in this case. *See Spuehler v. State*, 709 P.2d 202, 203-204 (Okla. Crim. App. 1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319-320 (1979)); *Easlick v. State*, 90 P.3d 556, 559 (Okla. Crim. App. 2004).

*Fields*, slip op. at 4.

In federal habeas review of a state court conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The Supreme Court repeatedly has emphasized the deference the reviewing court owes to the trier of fact and "the sharply limited nature of constitutional sufficiency review." *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson*, 443 U.S. at 319).

"[A] federal habeas corpus court faced with a record of historical facts that supports

5

conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. The court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993) (citing *United States v. Edmondson*, 962 F.2d 1535, 1548 (10th Cir. 1992)). "To be sufficient, the evidence supporting the conviction must be substantial; that is, it must do more than raise a mere suspicion of guilt." *Beachum v. Tansy*, 903 F.2d 1321, 1332 (10th Cir.) (citing *United States v. Troutman*, 814 F.2d 1428, 1455 (10th Cir. 1987)), *cert. denied*, 498 U.S. 904 (1990).

The OCCA applies the principles of *Jackson* when a defendant challenges the sufficiency of the evidence. Both *Easlick*, 90 P.3d at 557-59, and *Spuehler*, 709 P.2d at 203-04, which were cited by the OCCA in Petitioner's direct appeal, rely on *Jackson* as the standard and authority for claims of sufficiency of the evidence.

"[W]here a sufficiency challenge was resolved on the merits by the state courts, . . . AEDPA adds an additional degree of deference, and the question becomes whether the OCCA's conclusion that the evidence was sufficient constituted an unreasonable application of the *Jackson* standard." *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) (citations and internal quotation marks omitted), *cert. denied*, 553 U.S. 1079 (2008). This standard is called "deference squared." *Hooks v. Workman*, 689 F.3d 1148, 1166 (10th Cir. 2012) (quoting *Young v. Sirmons*, 486 F.3d 655, 666 n.3 (10th Cir. 2007)).

"Even if a state court resolves a claim in a summary fashion with little or no reasoning, [this court] owe[s] deference to the state court's result." *Paine v. Massie*, 339 F.3d 1194, 1198 (10th Cir. 2003). A state court's summary disposition must be upheld unless a federal habeas court is persuaded, after conducting an independent review of the record and pertinent federal law, that the state court's result "unreasonably applies clearly established federal law." *Id*. (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

To determine whether there was sufficient evidence presented at trial to sustain Petitioner's

conviction, the Court first must look to Oklahoma law for the elements required for the crime. *Jackson*, 443 U.S. at 324 n.16; *see also Torres v. Mullin*, 317 F.3d 1145, 1152 (10th Cir.), *cert. denied*, 540 U.S. 1035 (2003). The elements of Second Degree Burglary are:

> First, breaking;
> Second, entering;
> Third, a building;
> Fourth, of another;
> Fifth, in which property is kept;
> Sixth, with the intent to steal.

Okla. Stat. tit. 21, § 1435; OUJI-CR (2d) 5-13, Instruction No. 4 (O.R. 48); (Dkt. 18-1 at 52).

Petitioner contests the second element, entering, and the sixth element, intent to steal (Dkt. 1 at 7). "Entering" is defined as "[a]n entry which occurs when any part of a person's body is within the building." OUJI-CR (2d) 5-18, Instruction No. 5 (O.R. 49) (Dkt. 18-1 at 53). "Intent to Steal" is defined as "[i]ntent permanently to deprive the person in rightful possession of property without the possessor's consent." *Id.*[1]

Under Oklahoma law, the determination of intent is a question for the jury and may be proven by direct or circumstantial evidence. *Patton v. State*, 973 P.2d 270, 287 (Okla. Crim. App. 1998); *Rowland v. State*, 817 P.2d 263, 265-66 (Okla. Crim. App. 1991). Furthermore, intent as an element of burglary in the second degree "may be presumed from evidence that the accused broke into and entered the premises during the nighttime." *Lowe v. State*, 673 P.2d 167, 168 (Okla. Crim. App. 1983) (citing *Lyons v. State*, 516 P.2d 283, 285 (Okla. Crim. App. 1973)).

Petitioner argued on direct appeal that the State's proof of his intent to steal was dependent on his co-defendant's statement to police, which he asserted was improperly admitted. Ms. Allen's statement, however, was not central to or necessary for the jury to find him guilty beyond a reasonable doubt.

---

[1] The Court notes the definition of "Intent to Steal" in Instruction No. 5 includes an error in that it states the definition as "[i]ntent permanently to deprive the person in rightful possession of property *with* the possessor's consent (Dkt. 18-1 at 53). This error, however, was not raised in the petition.

7

The evidence showed that on November 13, 2012, at approximately 3:00 a.m., Sophia Lewis was awakened by the sound of glass breaking. When she looked out her window, she saw a man standing at her neighbor Robert Burkhart's house. Ms. Lewis called the police and was asked to look outside again. She then saw a young woman going through Mr. Burkhart's window, and she could hear the two people talking loudly. Ms. Lewis called the police again, but reported that it was too dark to identify anyone. When the police arrived, Ms. Lewis observed that the man she has seen by the neighbor's window was being handcuffed (Tr. 81-85).

Respondent argues that eyewitness testimony indicated Petitioner not only was a principle, but he also "entered" the house by leaning through the window. *See Loman v. State*, 806 P.2d 663, 666 (Okla. Crim. App. 1991) (Where the evidence shows a defendant had to reach through a window, the element of entering is met when "any part of a persons [sic] body is within the dwelling.") (citing *Lucero v. State*, 717 P.2d 605, 607 (Okla. Crim. App. 1986); *Beasley v. State*, 635 P.2d 627, 628 (Okla. Crim. App. 1981)).

Ardmore Police Officer Matthew Garrett testified he had his vehicle lights off when he responded to a burglary in progress at Mr. Burkhart's residence. Officer Garrett parked his car a couple of houses down from the house and walked to the scene of the reported burglary. As he approached the residence, Officer Garrett noticed a man leaning into a broken window and pushing the blinds to the side. The window screen was on the ground. As Garrett walked closer, he could hear the man talking to someone. Garrett detained Petitioner who stated Kristin was inside the house. Another officer arrived on the scene and detained Ms. Allen as she came from the backyard of the residence. (Tr. 87-88, 93, 98).

Respondent further notes that Mr. Burkhart's television was found lying on the ground, around the corner of the house from the broken window, suggesting Petitioner placed it there, contrary to his story that Ms. Allen tossed it from the window when he refused to take it (Tr. 100). In the front yard by the broken window, the police also found several bottles of Mr. Burkhart's liquor with Petitioner's fingerprints and a package of frozen pork chops (Tr. 92, 100, 162; State's Exhibit

8

2).

After careful review, the Court finds the evidence supports the OCCA's finding that Petitioner was a principal in the burglary of Mr. Burkhart's house, and the State proved the elements that he entered the premises and had the intent to steal Mr. Burkhart's property. *See Myers v. State*, 17 P.3d 1021, 1033 (Okla. Crim. App. 2000), *overruled on other grounds by James v. State*, 152 P.3d 255 (Okla. Crim. App. 2007) (finding that "all of the evidence," including the defendant's conflicting stories, supported the jury's verdict of guilt); *Lyons v. State*, 516 P.2d 283, 285-86 (Okla. Crim. App. 1973) (finding where the defendant testified in his own behalf and offered explanation that he did not have the intent to steal after breaking into a building, but was merely looking inside, his credibility was for the jury to decide); *Henson v. State*, 500 P.2d 859, 861 (Okla. Crim. App. 1972) (finding evidence the defendant was driving slowly near burglarized building with headlights out, and had turned his lights on and off as if to signal someone, and had come to town with co-defendant, was sufficient circumstantial evidence to support burglary charge). *See also Davis v. State*, 103 P.3d 70, 78 (Okla. Crim. App. 2004) ("Pieces of evidence must be viewed not in isolation but in conjunction.") (citation omitted); *Bernay v. State,* 989 P.2d 998, 1008 (Okla. Crim. App. 1999) (holding the OCCA "will accept all reasonable inferences and credibility choices that support the jury's verdict"), *cert. denied*, 531 U.S. 834 (2000) (citation omitted).

For the reasons set forth above, the Court finds the OCCA's decision on this claim was neither contrary to, or an unreasonable application of, *Jackson v. Virginia*. This ground for habeas relief is meritless.

**Prosecutorial Misconduct**

Construing the petition liberally, *Haines v. Kerner*, 404 U.S. 519 (1972), Petitioner also has raised a claim of prosecutorial misconduct during closing arguments. Petitioner complains "[t]he prosecutor stated that what the officer testified to, and what the co-defendant Kristin Allen said proves Petitioner's guilt beyond a reasonable doubt" (Dkt. 1 at 5). Petitioner is complaining of the following portion of the prosecutor's closing argument:

9

> . . . Kristin Allen told Detective Payne that she was in the house, but she was handing property out to Mr. Fields, and Mr. Fields was telling her what to get. That is aiding and encouraging the commission of a crime, in this case, burglary in the second degree.

(Tr. 176-77). In final closing, the prosecutor commented:

> What's reasonable is what Detective Payne testified to and what Kristin Allen told you. And Kristin Allen gave a statement that incriminated herself. But, in turn, it also incriminated [Petitioner]. She said, "Yes, I was in the house. I was handing property out to Daryl Fields. That's because Daryl Fields was telling me what to grab. Anything that was of value. Anything that had money" [sic]. She was fleeing that place at 3:00 a.m. with Daryl Fields.

(Tr. 188). Defense counsel made no objections to any of the prosecutor's contested comments.

The OCCA considered the claim on direct appeal and denied relief:

> Reviewing for plain error only, we find Fields has not shown the prosecutor's remarks challenged in his brief effectively deprived him of a fair trial and reliable sentencing proceeding. *See Harmon v. State*, 248 P.3d 918, 943 (Okla. Crim. App. 2011); *Hogan v. State*, 139 P.3d 907, 923 (Okla. Crim. App. 2006) (explaining elements of plain error). Fields has not shown he was prejudiced by the prosecutor's reference to the hearsay statement. Nor did the prosecutor argue facts not in evidence or attempt to define beyond a reasonable doubt. *See Thomason v. State*, 763 P.2d 1182, 1183 (Okla. Crim. App. 1988) (the statement "reasonable doubt is not all doubt" was not fundamental error); *Mack v. State*, 188 P.3d 1284, 1289 (Okla. Crim. App. 2008) (the parties have the right to freely discuss the evidence from their respective views during closing).

*Fields*, slip op. at 3. Respondent alleges the OCCA's determination of this claim was not contrary to, or an unreasonable application of, Supreme Court precedent.

> In a habeas corpus action, claims of prosecutorial misconduct are reviewed only for a violation of due process. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a failure to observe that fundamental fairness essential to the very concept of justice." *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974) (citations and quotations omitted). In order to be entitled to relief, [a petitioner] must establish that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 643. This determination may be made only after considering all of the surrounding circumstances, including the strength of the State's case. *See Darden*, 477 U.S. at 181-82.

*Malicoat v. Mullin*, 426 F.3d 1241, 1255 (10th Cir. 2005), *cert. denied*, 547 U.S. 1181 (2006).

> Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase. Any cautionary

steps--such as instructions to the jury--offered by the court to counteract improper remarks may also be considered. Counsel's failure to object to the comments, while not dispositive, is also relevant to a fundamental fairness assessment. . . . Ultimately, this court considers the jury's ability to judge the evidence fairly in light of the prosecutor's conduct.

*Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citations omitted), *cert. denied*, 540 U.S. 833 (2003).

After carefully reviewing the record, the Court finds the evidence supported the OCCA's determination that Petitioner was not prejudiced by the prosecutor's reference to Ms. Allen's hearsay statement. The OCCA's decision was consistent with clearly established Federal law, as determined by the Supreme Court of the United States. In addition, the OCCA's decision was not based on an unreasonable determination of the facts in light of the evidence at trial. Habeas relief is not warranted for this claim.

**Certificate of Appealability**

The Court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In addition, he has not "demonstrate[d] that reasonable jurists would find [this] court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, Petitioner should be denied a certificate of appealability.

**ACCORDINGLY**, Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and Petitioner is DENIED a certificate of appealability.

**IT IS SO ORDERED** this 13th day of March 2017.

Ronald A. White
United States District Judge
Eastern District of Oklahoma